## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 04-B-0739-NE |
| | ) | |
| DILLARD'S, INC., a/k/a CASTER | ) | |
| KNOTT DRY GOODS CO., d/b/a | ) | |
| DILLARD'S, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 9.)[1] Plaintiff Sylvia Parker has sued her former employer, Caster-Knott Dry Goods Co., doing business as Dillard's, alleging that defendant discriminated against her on the basis of her gender and her age, and that it retaliated against her for complaining about discrimination, in violation of federal law. Plaintiff also alleges state-law causes of action for negligent, wanton, and/or intentional hiring, training, investigation, and retention. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 9), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

# I. <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>

In September 1995, plaintiff Sylvia Parker began working in a sales position at Castner-Knott in Madison Square Mall in Huntsville, Alabama. (Doc. 10, Ex. A at 74.) Shortly thereafter, plaintiff was promoted to an Area Sales Manager position in the Ladies' Clothing Area. (*Id*. at 69-70.)

Defendant purchased the Caster-Knott store in August 1998, and it has operated the store as Store No. 456 since that time. (*Id*., Ex. B at 21.) The following year, defendant moved plaintiff to the position of Manager of the Men's Store. (*Id*., Ex. A at 153.)

On July 28, 2000, then-Store Manager Bill Marerro addressed the following concerns with plaintiff: (1) associates were not properly trained to Dillard's standards; (2) poor merchandise presentation; (3) associates were not being informed of their tasks and management expectations; (4) plaintiff was not following instructions given to her by store management; and (5) associates in men's clothing were unsure about organizational procedures, which had led to messy and disorganized stock. (*Id*., Ex. A at 159, 161-62, and ex. 43.) No disciplinary action was taken against plaintiff at this time. (*Id*., Ex. B at 273-75.)

However, plaintiff was given specific objectives to meet within 90 days of her meeting with Marerro, including – maintain an acceptable level of sales; spend 15 minutes with each associate teaching merchandising techniques and presentation standards; provide schedules to her associates by 5:00 p.m each Friday; hold weekly department meetings to set goals and sales plans and to help develop customer service skills; meet with each associate

3

on a monthly basis to review sales performance; and maintain her area in "a clean, organized, and well merchandised manner."  (*Id*., Ex. A, ex. 13 at D00270.)  Plaintiff testified that she attempted to comply with these objectives, but she felt that she did not have enough time to complete all of them.  (*Id*., Ex. A at 191-95.)

Marrero resigned in September 2000, and Mary Davis, Operations Manager became the Interim Store Manager.  (*Id*., Ex. B at 33-34, 111.)  On September 30, 2000, Davis followed up with plaintiff's progress toward meeting her objectives.  (*Id*. at 199 and ex. 14; *id*., Ex. B at 275-76 and ex. 44.)  Plaintiff had not performed the 15-minute meetings with her associates on a weekly basis as requested because "[t]here were not enough hours in the day."  (*Id*., Ex. A at 201-02.)  Plaintiff had held morning meetings, which lasted only a few minutes, and several of her associates would "run over and come in late."  (*Id*. at 210.)

At that time, Davis noted the presentation of merchandise in the Men's Department was not up to defendant's standards.  (*Id*., Ex. B at 289-91.)  Although plaintiff's performance had improved by this September meeting, plaintiff acknowledged that there were occasions when the "presentation standards" were not met in her area and that it was her responsibility to make sure that did not happen.  (*Id*., Ex. A at 211-14.)

No disciplinary action was taken against plaintiff at this time.  (*Id*., Ex. B at 293-94.)

In October of 2000, Steve Moretti became the Store Manager of Store 456.  (*Id*., Ex. B at 290.)  Plaintiff claims that Moretti harassed her because of her age and her gender. (*Id*., Ex. A at 28-29, 405-06.)  She testified that during the period of time she worked with him,

Moretti was "always rude" to her, he yelled at her, called her stupid, and ridiculed and demeaned her in front of her associates. (*Id*. at 238-40, 260, 293-94, 315-18, 321, 355-56, and ex. 24.) She testified that "Steve was always rude to me. He never used a pleasant tone of voice. Never. He never had anything good, kind or nice to say to me." (*Id*. at 321.) Plaintiff acknowledged that Moretti would use harsh language with both older and younger people, and male and female managers. (*Id*. at 369-71.) However, she testified that Moretti did not humiliate men and that he treated men and younger women better than older women. (*Id*. at 240, 440-44.)

In October 2000, plaintiff had requested to be off on Monday, October 23, 2000, and Tuesday, October 24, 2000. (*Id*., Ex. A at 237.) Davis called plaintiff on the preceding Saturday and told her that Moretti had insisted that plaintiff work on Monday, but that plaintiff did not need to work on Sunday. (*Id*. at 236-37.) Early Sunday morning, plaintiff went to the store to work on cleaning her office. (*Id*. at 238.) Moretti saw her and made "a big scene, waving his arms, eyes bulging." (*Id*. at 238-39.) Plaintiff testified he was "really, really nasty, like [she] was trespassing or a criminal." (*Id*. at 239.)

On November 7, 2000, Moretti and Davis met with plaintiff to discuss performance issues. (*Id*., Ex. A at 232 and ex. 16; *id*., Ex. B at 287-88, 92-93.) Several associates had complained to Moretti that plaintiff was unprofessional in that she "goes around telling her favorite associates about others in the department, and problems she is having with them." (*Id*., Ex. A, ex. 16.; *id*, Ex. B at 287-89 and ex. 47.)   Plaintiff testified that Moretti told her

"that no one had any respect for [her], that everybody hated [her], that he had a lot of complaints about [her]. (*Id.*, Ex. A at 247-48.) When plaintiff asked him which of her associates had complained, he told plaintiff that was "none of [her] damn business, " and that she did not "have to know." (*Id.*, Ex. A at 248.)

> Moretti and Davis also told plaintiff:
>
> [The Men's Store is] so far out of Dillard's standards, that we had to have the store's visual crew work over there for two weeks straight to get it to some kind of basic order. This took the visual merchandisers away from their other duties, thus putting the store behind on getting the Christmas shop set up. After this was completed, the visual staff went back to their regular duties, and within one week of leaving the men's store, the standards went back down to the point we had to get another crew of people to get it back in order.

(*Id.*, Ex. A, ex. 16.) Moretti discussed with plaintiff (1) her lack of organizational skills, which he contended resulted in uncompleted tasks and frustrated associates; (2) her failure to follow directions from her superiors, and (3) her lackluster sales performance. (*Id.*)

Defendant took no disciplinary action against plaintiff as a result of this meeting. (*Id.*, Ex. B at 293-94.)

Plaintiff claims that during a meeting with her associates, Moretti said that he was prepared to start "cleaning house" and that he had "given attitude adjustments to several people, and [he would] do it again." (*Id.*, Ex. A at 317.) On one occasion, Moretti told plaintiff, in front of her associates and customers, that two "outrageously dressed" mannequins in her area looked "like shit," and he made "a real big deal out of it." (*Id.* at 288-89.) Also, Moretti complained about mis-ticketed merchandise, saying "[W]hat is the

matter, can't you read, I mean, are you too old and blind, you can't see these tickets." (*Id.* at 290.)

One day plaintiff asked her assistant to complete a "Special Hours Form" in order to pay an employee vacation time. (*Id.* at 325-26.) The assistant did not turn in the form. (*Id.* at 326.) By the time plaintiff realized the form had not been submitted, the deadline for submitting the form had passed. She went to the store secretary, who told plaintiff that she would ask Moretti if he would make an exception regarding the time limits. (*Id.* at 326-27.) Moretti called plaintiff and "screamed and yelled about the form not being turned in on time." (*Id.* at 327.) He asked her, "[D]o you understand those people aren't going to get paid and how would you feel if you didn't get your money[?]" (*Id.* at 327.) Moretti told plaintiff to tell the employee that she was not going to be paid "because [plaintiff was] too stupid to take care of it." (*Id.* at 328.) Plaintiff paid the employee out of her pocket, and the employee repaid her. (*Id.* at 329-30.)

Plaintiff testified that one day Moretti was in her stockroom and saw some blue jeans that had been damaged during a flood and had been taken off the sales floor. She testified that Moretti threw "stuff" around and asked her about why the blue jeans were in the stock room. (*Id.* at 321-11.) Plaintiff responded that Moretti had told her to take the blue jeans off the floor and that he had never told her what he wanted to do with them after that, despite her questioning him. (*Id.* at 323, 324-25.) Moretti turned to plaintiff's male assistant, asked him

7

what size he wore, and gave him a pair of the blue jeans.  (*Id*. at 323-24.)  Moretti did not

give plaintiff a pair of blue jeans.  (*Id*. at 325.)

On another occasion, plaintiff testified that Moretti told her he had received a

customer complaint that plaintiff had used a four-letter word on the sales floor.  (*Id*. at 399.)

Plaintiff told Moretti she did not believe that was true, and asked for the customer's name.

(*Id*. at 400.)  Moretti's response was that he did not have to tell plaintiff the customer's name

and that he had taken care of it.  (*Id*. at 400-01.)  Plaintiff denied ever saying the word on the

sales floor and she testified that the accusation was made by one of her associates.  (*Id*. at

401-03.)  She testified that Moretti used the false complaint to "degrade [her], demean [her],

and curse at [her]."  (*Id*. at 404.)

Plaintiff submitted her resignation and a two-week notice on December 4, 2000.  (*Id*.

at 331-32 and ex. 20.)  On the resignation form, plaintiff checked the box marked "no reason

given," as to her reason for leaving.  (*Id*. at 331 and ex. 20.)  On the day she submitted her

resignation, plaintiff spoke with Davis, and she told Davis, "I just can't take it anymore."

(*Id*. at 334.)  Plaintiff did not remember making any specific reference to Moretti.  (*Id*., Ex.

A at 335.)

The store held a party for plaintiff, and her associates gave her a Waterford crystal

bowl as a going away present.  (*Id*. at 335-36, 372.)

On or about her last day of work, plaintiff completed a second notice of resignation

form, and, on the second form, she indicated that the reason she was resigning was

8

"discriminatory and hostile work environment." (*Id.* at 338-39 and ex. 22.) She did not submit this form directly to Davis or Moretti because she "feared retaliation on Mr. Moretti's part." (*Id.* at 339.) She gave the second form to the dock manager and asked him to give it to the store secretary. (*Id.*, Ex. A at 343.) Also, on or about her last day of employment, she mailed a letter to defendant's corporate office, which stated that she was resigning because of Moretti and his "apparent discriminating attitude and demeanor towards [her] in comparison to the much younger male he hired as [her] assistant." (*Id.* at 344-45, 347 and ex. 24.)

Plaintiff testified that Moretti did not touch her, but he "demean[ed]" her and "rob[bed] [her] of [her] self-esteem and [her] confidence." (*Id.* at 341, 358.)

Plaintiff did not complain about discrimination before her last day of work. (*Id.*, Ex. A at 362-63.) She said that she was familiar with and had been trained on defendant's anti-harassment policy. ( *Id.* at 147, 158-59, and exs. 8, 10, 12.) Under defendant's policy, plaintiff could have complained above Moretti through several available avenues. (*Id.* at ex. 10 at D-01393.) Plaintiff admits that she did not follow the harassment policy, and she made no effort to complain about Moretti because she "didn't think [she] could get anywhere." (*Id.* at 363, 396.) Her opinion, based on her experience and information from other employees, was that defendant did not take complaints of discrimination seriously. (*Id.* at 362-66.)

Plaintiff filed her charge of discrimination with the EEOC on February 16, 2001. (*Id.* at ex. 27.) She was 50 years old at that time. (Doc. 1 at 22.)

9

## III. <u>DISCUSSION</u>

### A. HOSTILE ENVIRONMENT

Plaintiff alleges that "defendant subjected [her] to threatening, bellicose, demeaning, hostile and offensive conduct by her supervisor because of her sex on a daily, constant, and continuing basis that affected the terms and condition of her employment and [her] ability to perform the duties and functions of her job." (Doc. 1 ¶ 38.)    She also alleges that she was subject to "harassment and hostility" because of her age. (*Id.* ¶ 77.) Defendant contends that plaintiff cannot establish that the alleged harassment was based on plaintiff's sex or her age, that the conduct was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment, and/or that there is a basis for holding it liable for Morreti's alleged harassing conduct.   Because plaintiff has not shown that the harassment was sufficiently severe or pervasive to support her hostile environment claims, the court pretermits discussion of defendant's other grounds for granting its Motion for Summary Judgment on this claim.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998). In *Gupta v. Florida Board of Regents*, the Eleventh Circuit held:

> The fourth element – that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work

environment" – is the element that tests the mettle of most sexual harassment claims.  Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code."

*Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (2000)(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  "Title VII prohibits only the type of severe or pervasive sexual harassment that 'alter[s] the conditions of the victim's employment.'" *Johnson v. Booker T. Washington Broadcasting Service*, 234 F.3d 501, 509 (11th Cir. 2000)(quoting *Oncale*, 523 U.S. at 80-81).  It "does not prohibit all verbal or physical harassment in the workplace." *Id*. (internal quotations omitted).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788.

In *Mendoza*, the Eleventh Circuit, sitting en banc, reiterated the standards applicable to hostile environment claims:

> Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component.  . . . .  The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable.  The environment must be one that a reasonable person would find hostile or abusive and that the victim subjectively perceives to be abusive.  Furthermore, the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.

> The objective component of this analysis is somewhat fact intensive.  Nevertheless, the Supreme Court and this Court have identified the following

11

four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) *the frequency of the conduct*; (2) *the severity of the conduct*; (3) *whether the conduct is physically threatening or humiliating, or a mere offensive utterance*; and (4) *whether the conduct unreasonably interferes with the employee's job performance*.  The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)(internal quotations and citations omitted; emphasis added).  The Supreme Court in *Faragher*, held, "We have made it clear that conduct must be *extreme* to amount to a change in the terms and conditions of employment . . . ."  *Faragher*, 524 U.S. at 788 (emphasis added; citations omitted).

Plaintiff contends –

that during the approximate two and one half (2 ½) months she worked with him, Mr. Moretti was always rude to her, would yell at her, would call her stupid, would speak to her in a harsh manner, and would ridicule and demean her in front of her subordinates such that it undermined her ability to [do] her job.  [Plaintiff] could no longer endure the barrage of verbal abuse from Mr. Moretti, and ultimately resigned her employment.  From these facts a reasonable jury could conclude that the daily verbal abuse [plaintiff] received from Mr. Moretti was severe or pervasive enough to alter her work environment.

(Doc. 13 at 8.)  However, plaintiff testified that she did not see Moretti "very much." (Doc. 12, Ex. A at 370.)  She testified that he humiliated her, but he did not physically touch her.  Her evidence of harassment consists of a number of incidents where Moretti railed at her in front of her associates.

12

Based on a review of the record and considering existing Eleventh Circuit case law, the court finds that these incidents of harassment are not sufficiently objectively severe and/or pervasive to alter plaintiff's work environment.   Compare *Hulsey v. Pride Restaurants*, 367 F.3d 1238, 1248 (11th Cir. 2004)(finding harassment was objectively severe and pervasive based on 18 incidents over two and half weeks including the harasser's "direct as well as indirect propositions for sex," "following [plaintiff] into the restroom, and repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her"); *Johnson*, 234 F.3d at 509 (finding harassment was objectively severe and pervasive based on "fifteen separate instances of harassment over the course of four months,"which included the harasser "giving [plaintiff] unwanted massages, standing so close to [plaintiff] that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts") *with Gupta*, 212 F.3d at 584-85 (harassing conduct - including "one occasion [when harasser said], 'You are looking very beautiful,'" frequent telephone calls, isolated "comments about the promiscuity of people from Jamaica as compared to the innocence of people from India," harasser "stared at [plaintiff] twice, touched her ring and bracelet once, and kept asking her to lunch," and harasser "plac[ed] his hand on [plaintiff's] knee once, and . . touch[ed] the hem of her dress once" over six or seven months – was not sufficiently severe or pervasive conduct); *Mendoza*, 195 F.3d at 1247 (harassing conduct – "(1) one instance in which [the harasser] said to [plaintiff,] 'I'm getting fired up'; (2) one occasion

13

in which [the harasser] rubbed his hip against [plaintiff's] hip while touching her shoulder and smiling; (3) two instances in which [harasser] made a sniffing sound while looking at [plaintiff's] groin area and one instance of sniffing without looking at her groin; and (4) [harasser's] 'constant' following and staring at [plaintiff] in a 'very obvious fashion'" – not sufficiently severe or pervasive).

Therefore, because the court finds that the harassment was not sufficiently severe and/or pervasive to support a claim for discriminatory harassment, defendant's motion for Summary Judgment is due to be granted, and plaintiff's sex and age hostile environment harassment claims will be dismissed.

Because the court finds Moretti's treatment of plaintiff does not rise to the level of an actionable hostile environment claim, the court pretermits discussion of whether the harassment was based on plaintiff's gender or age, and whether defendant is entitled to raise the *Faragher/Ellerth* affirmative defense.

However, the court notes that plaintiff contends that defendant is legally responsible for Moretti's harassment because she suffered a tangible job action – constructive discharge – after Moretti's "verbal abuse and behavior." (Doc. 13 at 7-8.) In order for constructive discharge to constitute a "tangible job action," an "official act" must underlie the constructive discharge. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148-49 (2004). Such "official act" can include "demotion or a reduction in compensation," transfer, or "extremely dangerous job assignment." *Id*. at 148, 150. Plaintiff has alleged no such official act as the

14

underlying cause of her constructive discharge. Therefore, the *Faragher*/*Ellerth* affirmative

defense would apply in this case.

## B.  DISPARATE TREATMENT – DISCIPLINE

Plaintiff contends that defendant discriminated against her on the basis of her age and

sex based on the meetings and write-ups she had regarding her job performance.  However,

she makes no argument that such meetings and write-ups resulted in a loss of pay or other

"***serious and material*** change in the terms, conditions, or privileges of employment." *Davis*

*v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)("We therefore hold that, to

prove adverse employment action in a case under Title VII's anti-discrimination clause, an

employee must show a ***serious and material*** change in the terms, conditions, or privileges

of employment.")(emphasis in original).

The Eleventh Circuit has held:

> Given that Congress in § 2000e-2(a)[2] has expressly limited the types of
> employer actions which may give rise to a Title VII discrimination claim, . .
> . a claim [of discriminatory discipline] rarely may be predicated merely on

---

[2]Section 2000e-2(a) states:

It shall be an unlawful employment practice for an employer –

> (1)  to fail or refuse to hire or to discharge any individual, or otherwise
> to discriminate against any individual with respect to his compensation,
> terms, conditions, or privileges of employment, because of such
> individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a).

employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment.

*Davis*, 245 F.3d at 1242 (footnote added). "[W]here an employer's allegedly unfounded criticism of an employee's job performance . . . does not constitute a formal reprimand or trigger any tangible form of adverse action such as loss in benefits, ineligibility for promotional opportunities or more formal discipline, such criticism is rarely actionable under Title VII." *Austin v. City of Montgomery*, No. 05-16737, 196 Fed. Appx. 747, 752, 2006 WL 2219726, *4 (11th Cir. 2006)(citing *Davis*, 245 at 1242).

Because plaintiff has described no serious and material change in her employment caused by the meetings and write-ups, she has failed to prove an actionable adverse employment action necessary to satisfy her prima facie case of discrimination with regard to discipline. Therefore, defendant's Motion for Summary Judgment as to plaintiff's disparate treatment claims is due to be granted, and such claims are due to be dismissed.

## C. RETALIATION

In order to establish a prima facie case of retaliation, plaintiff must show: (1) a statutorily protected activity; (2) an adverse employment action;  and (3) a causal link between the protected activity and the adverse employment action. *Gupta v. Florida Board of Regents* 212 F.3d 571, 587 (11th Cir. 2000). Plaintiff alleges that she was disciplined because she complained of fellow employee Ben Parton's "sexually harassing and discriminatory conduct." (Doc. 13 at 13.)

16

As set forth *supra*, the discipline plaintiff received – meetings and write-ups – do not constitute adverse employment actions sufficient to support her retaliation claim.  See, *supra*, p. 15-16.  Therefore, plaintiff's retaliation claims are due to be dismissed.[3]

## D.  NEGLIGENT OR WANTON TRAINING AND RETENTION OF MORETTI

Pursuant to Alabama law:

> [I]n the master and servant relationship, the master is held responsible for the servant's incompetency when notice or knowledge, either actual or presumed, of the incompetency has been brought to the master.  For the master to be held liable for the servant's incompetency, it must be affirmatively shown that had the master exercised due and proper diligence, the master would have learned of the incompetency.  ***This may be done by showing specific acts of incompetency and showing that they were brought to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that the master, in the exercise of due care, must have had notice of them***.  While specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when ***repeated*** acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury to determine whether they would have come to the master's knowledge had the master exercised ordinary care.

> Assuming [plaintiff] has been damaged by the acts of [the alleged incompetent servant], she has not established that the damage occurred because of any incompetency on [the servant's] part for which [defendant-employer] might conceivably be liable.   [Plaintiff] has shown only that [defendant-employer] may have received notice of [the servant's] alleged incompetency on . . . the last day of her employment with [defendant-employer].  She did not report [the servant's] conduct to [defendant-employer] before that date.   This may be sufficient to survive a summary judgment

---

[3]The court notes that the record contains insufficient evidence that plaintiff engaged in protected activity or that the decisionmaker was aware of such protected activity. However, because the court finds that plaintiff did not suffer an adverse employment action, it pretermits further discussion of her retaliation claim.

motion as to claims of liability based on [defendant-employer's] ratification of [the servant's] conduct, but it is insufficient to allow [plaintiff] to present this issue to a jury on the issue of negligent training and supervision.

*Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 890 (1995)(citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993)).

Plaintiff relies on evidence of a single complaint of discriminatory conduct by Moretti prior to her resignation to "create a question of fact as to whether the Defendant had notice triggering its duty to protect Ms. Parker."  (Doc. 13 at 16.)  She states:

Ms. [Judith] Anderson complained of harassment and violations of federal employment laws relating to Mr. Moretti.  This incident put the Defendant on notice that Mr. Moretti was a risk to violate federal law and harass employees. The Defendant ignored notice of Mr. Moretti's wrongful conduct and moved him to work with Ms. Parker which ultimately led to her injury, her resignation.  Viewing the facts in a light most favorable to Ms. Parker, the Defendant . . . breached its duty of care owed to her when it transferred Mr. Moretti to become her supervisor.

(*Id.*)

In Alabama, to prove a claim of negligent hiring, training, and/or retention, plaintiff must show that the employer had "notice or knowledge, either actual or presumed," of the employee's incompetency or unfitness." *Pritchett v. ICN Medical Alliance, Inc.*, 938 So. 2d 933, 940 (Ala. 2006)(citing *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970)) A single incident of alleged wrongful or negligent behavior is not sufficient evidence to support a finding that defendant knew or should have know that its employee was "incompetent." *See Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App.), *certiorari denied* (Ala. 2000); *see also Alabama City, G. & A. Ry. Co. v. Bessiere*, 66 So. 805, 807 (Ala.

18

1910)("Now, as to incompetency . . . deficiency in a servant is not shown by an instance of negligence on the part of the servant; nor would that be sufficient to allow the imputation to the master of notice of his incompetency.  Negligence is not synonymous with incompetency. The most competent may be negligent.)(internal citations and quotations omitted).

Plaintiff's evidence that defendant had notice or knowledge of Moretti's unfitness is a single allegation that he had discriminated against an employee prior to moving to Huntsville.   Therefore, plaintiff's evidence of defendant's notice or knowledge is insufficient.  The court finds that defendant's Motion for Summary Judgment as to plaintiff claims of negligent, wanton, and/or intentional failure to train, hire, supervise and retain, is due to be granted.[4]

---

[4]"A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees."  *Voyager Ins. Companies v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003)(citing *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820 (Ala. 1999)).  In addition to lack of notice, defendant argues that Alabama does not recognize a negligent hiring, training, and retention claims based on an employee's commission of a wrongful act of discrimination.  (Doc. 11 at 27-28 [citing *Hathorn v. Boise Cascade Corp.*, No. 97-0521-BH-M, 1998 U.S. Dist. Lexis 18113 at *24-25 (S.D. Ala.  Nov. 3, 1998); *Thrasher v. Ivan Leonard Chev.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002]); *see also Hanes v. Mobile Infirmary Medical Center*,   2005 WL 1840236, *18 (S.D. Ala. Aug. 2, 2005)("[T]he Alabama Supreme Court has held that a plaintiff is required to prove ***an underlying common-law tort*** in order to prevail in a claim for negligent supervision, training or retention.")(emphasis added; citations omitted).  Because this court finds that defendant did not have notice that Moretti was unfit and/or incompetent, the court pretermits discussion of whether Alabama considers proof of discrimination in violation of federal law as proof of "underlying wrongful conduct."

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts

in dispute and defendant is entitled to judgment as a matter of law.  An Order granting

defendant's Motion for Summary Judgment will be entered contemporaneously with this

Memorandum Opinion.

**DONE**, this the 28th day of February, 2007.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE